KILPATRICK TOWNSEND & STOCKTON LLP
STEVEN D. MOORE (State Bar No. 290875)
smoore@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: 415 576 0200
Facsimile: 415 576 0300

MEGAN M. CHUNG (State Bar No. 232044)
mchung@kilpatricktownsend.com
9720 Wilshire Blvd PH
Beverly Hills, CA 90212-2018
Telephone: (310) 248-3830
Facsimile: (310) 860-0363
(*Additional Counsel Included on Signature Page*)

Attorneys for Defendant
WALMART INC.

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| CARAVAN CANOPY INT'L, INC.,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC., DOES 1 THROUGH 10,<br><br>Defendants. | Civil Action No. 2:19-cv-06978-PSG-ADS<br><br>consolidated with Case. No. 8:19-cv-01072-PSG-ADS<br><br>**WALMART'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS**<br><br>Hearing Date: June 1, 2020<br>Time: 1:30 pm<br>Location: Courtroom 6A<br>Judge: Judge Philip S. Gutierrez |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......................................................................... 1

II. BACKGROUND ............................................................................ 2

III. LEGAL STANDARD ..................................................................... 5

IV. ARGUMENT ................................................................................. 7

    A. Caravan's Infringement Contentions Fail to Comply With S.P.R. 2.1.2 ................................................................ 8

        1. "Ozark Trail" is not a specific type of instant canopy ................................................................ 8

        2. Caravan had access to much more information than it disclosed in its contentions ................................................................ 9

    B. Caravan's Claim Chart Is Inadequate Under S.P.R. 2.1.3 ................................................................................ 11

V. CONCLUSION .............................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Antonious v. Spalding & Evenflo Cos.*,
  275 F.3d 1066 (Fed. Cir. 2002) ................................................................................ 5

*Caravan Canopy Int'l, Inc. v. The Home Depot USA, Inc.*,
  Case No. 8:19-cv-01072-PSG-ADSx (C.D. Cal.) ................................................... 3

*DGS Sys. v. Checkpoint Techs., LLC*,
  No. C 11-03792 PSG, 2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) ................... 5

*Droplets, Inc. v. Amazon.com, Inc.*,
  No. C12-03733 HRL, 2013 WL 1563256 (N.D. Cal. Apr. 12, 2013) ............. 5, 10

*Essociate, Inc. v. 4355768 Canada Inc.*,
  Case No. SACV 14-0679 JVS (DFMx), 2015 WL 12745799 (C.D. Cal. Jan. 14,
  2015) ................................................................................................................... 7, 9

*Geovector Corp. v. Samsung Elecs. Co.*,
  No. 16-cv-02463-WHO, 2017 WL 76950 (N.D. Cal. Jan. 9, 2017) ................. 5, 8

*Grecia v. Apple, Inc.*,
  No. C-14-0775 EMC, 2014 WL 4685195 (N.D. Cal. Sept. 19, 2014) .............. 6, 8

*Infineon Techs. AG v. Volterra Semiconductor Corp.*,
  No. C 11-6239 MMC (DMR), 2012 WL 6184394 (N.D. Cal. Dec. 11, 2012)
  ......................................................................................................................... passim

*Mortgage Grader, Inc. v. Costco Wholesale Corp.*,
  Case No. SACV 13-00043 AG (ANx), 2014 WL 10763261 (C.D. Cal. Oct. 27,
  2014) ......................................................................................................................... 6

*O.S. Security LLC v. Sargent Mfg. Co.*,
  No. SACV 14-0318 AG (DFMx), 2014 WL 12601564 (C.D. Cal. July 10, 2014) 13

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) ................................................................................ 5

*Shared Memory Graphics LLC v. Apple, Inc.*,
  812 F. Supp. 2d 1022 (N.D. Cal. 2010) .................................................................. 6

# TABLE OF AUTHORITIES
(continued)

*Theranos, Inc. v. Fuisz Pharma LLC*,
   Case Nos. 11-cv-05236-YGR, 12-cv-03323-YGR, 2012 WL 6000798 (N.D. Cal. Nov. 30, 2012) ............................................................................................................... 6

*Uniloc USA, Inc. v. Apple Inc.*,
   No. C-18-00360 WHA, 2018 WL 3219486 (N.D. Cal. July 2, 2018) .................. 7

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
   208 F.3d 981 (Fed. Cir. 2000) ............................................................................. 6

**Rules**

Fed. R. Civ. P. 1 ............................................................................................................ 5

Fed. R. Civ. P. 11 .......................................................................................................... 5

Fed. R. Civ. P. 16 .......................................................................................................... 5

## I. INTRODUCTION

In this patent case involving a now-expired patent covering a specific type of instant canopy, Plaintiff Caravan Canopy International, Inc.'s ("Caravan") Infringement Contentions are deficient for at least two reasons: Caravan does not identify the accused products with required specificity, and Caravan fails to explain how each accused product infringes. Caravan alleges that an unknown number of Walmart, Inc. ("Walmart") instant canopies made by other vendors infringe the claims of U.S. Patent No. 5,944,040 (the "'040 patent"). Despite Caravan being in the market for years and notwithstanding its status as a Walmart vendor (and presumably, knowledge of Walmart's competing inventory), Caravan's Infringement Contentions fall far short of satisfying Judge Guilford's Standing Patent Rules (S.P.R.), the operative patent rules for contentions.

Under Judge Guilford's Standing Patent Rules, a Patentee must provide infringement contentions that reflect its pre-filing investigation and identify "[s]eparately for each asserted claim, each Accused Instrumentality. *This identification shall be as specific as reasonably possible*." Declaration of Kathleen Geyer in Support of Walmart's Motion to Strike Caravan's Infringement Contentions ("Geyer Decl.") at ¶ 2, Ex. A at S.P.R. 2.1.1 (emphasis added). Caravan's Infringement Contentions, however, fail to identify a single Walmart product that it accuses of infringement, despite the plethora of publicly available information available, for example, on Walmart's own website.[1] Instead, they describe only a category of products known as "Ozark Trail." But Ozark Trail is a Walmart brand that encompasses many non-canopy products, including tents, coolers, sleeping bags,

---

[1] *See, e.g.*, https://www.walmart.com/ip/Ozark-Trail-12-x-12-Instant-Canopy/55208741 (representative webpage for Ozark Trail 12' x 12' Instant Canopy showing, among other things: (a) the name of the product; (b) Walmart's specific product number; and (c) a user manual containing manufacturer part numbers) (last visited March 31, 2020). To avoid any doubt, Walmart disputes that this product infringes the '040 patent's claims.

camping furniture, camping kitchens, backpacks, and other camping accessories.[2] Caravan's single claim chart accompanying its infringement contentions identifies the "Walmart, Ozark Trail cathedral style frame," which is neither the name of a Walmart instant canopy nor a description used for any Walmart Ozark Trail instant canopy products. *See* Geyer Decl. at ¶ 8, Ex. F. Caravan also never alleges that the unknown product depicted in its claim chart is somehow representative of any other Walmart accused instant canopies. In other words, Caravan's Infringement Contentions require Walmart to guess as to which of its various instant canopies are at issue in this lawsuit, and which are not.

Caravan's Infringement Contentions provide none of the notice required by the Standing Patent Rules. Walmart has no notice of which products supposedly infringe the '040 patent, much less what aspects of its products correspond with each of the '040 patent's claim limitations. Accordingly, Walmart respectfully requests that the Court strike the contentions for failure to comply with the Standing Patent Rules.

## II. BACKGROUND

The plaintiff and patent owner, Caravan, has been in the instant canopy business for more than a decade. It has owned the '040 patent since June 23, 2004, Geyer Decl. at ¶ 4, Ex. C at 2, and sells its own canopies through Walmart's website.[3]

---

[2] *See* https://www.walmart.com/cp/2559937?search_redirect=true&redirect_query=%22ozark%20trail%22&redirectQuery=%22ozark%20trail%22 (last visited March 31, 2020).

[3] *See, e.g.*, https://www.walmart.com/browse/sports-outdoors/canopies-shelters/caravan-canopy/4125_546956_4128_55558/YnJhbmQ6Q2FyYXZhbiiBDYW5vcHkie (last visited March 31, 2020).

WALMART'S MEMO ISO MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS - 2 -
CASE NO. 2:19-CV-06978-PSG-ADS

The '040 patent covers a specific type of instant canopy. Such instant canopies are commonly found at barbeques, sporting and tailgating events, and similar outdoor activities. Specifically, the claims of the '040 patent are directed to instant canopies with a collapsible frame, a center pole, side poles, ribs, connectors, sliders, a hinge joint, and a support link. The purpose of the invention is to "heighten[] the interior space of the tent" to "allow[] users to freely go out of, come into, to stand in the [canopy] without being concerned about bumping one's head." '040 patent (ECF No. 1-1), 4:13-19; 3:34-37; 1:61-64 (describing problems in the prior art). Figure 3 from the patent shows a representative embodiment:



On August 12, 2019, Caravan filed the instant lawsuit alleging that various Walmart canopies infringe the '040 patent. Prior to this lawsuit, Caravan was aware of Walmart, including because it provides its own instant canopy products for sale on Walmart.com. *See supra* n. 3. Further, this is not the first time that Caravan sued Walmart. On May 31, 2019, Caravan filed a complaint against Walmart, nine other named defendants, and numerous "DOE" defendants, accusing them of infringing the '040 patent. *See Caravan Canopy Int'l, Inc. v. The Home Depot USA, Inc.*, No. 8:19-cv-01072-PSG-ADSx (C.D. Cal.), ECF No. 1. On June 28, 2019, Caravan filed a first amended complaint, removing Walmart from that case. *See id.*,

ECF No. 29.

In its complaint in this case, Caravan alleges that Walmart "makes, imports, uses, offers to sell, and sells a wide range of products branded under the label 'Ozark Trail' including collapsible 'instant' tent canopies." Compl. ¶ 10 (ECF No. 1). 20 days late, Caravan ultimately served its S.P.R. 2.1 Disclosure of Asserted Claims and Infringement Contentions. *See* Geyer Decl. at ¶ 3, Ex. B. In Caravan's Infringement Contentions, it identifies the Accused Instrumentalities only as "Ozark Trail, for each asserted claim." *Id*. at 2. "Ozark Trail," however, is not an instant canopy product nor even an instant canopy brand. Instead, it is a Walmart brand of outdoor equipment encompassing a wide variety of products, including cast iron skillets, flashlights, folding chairs, coolers, backpacks, tents, and canopies. There are over 1,000 Ozark Trail products on Walmart.com. *See* Geyer Decl. at ¶ 5, Ex. D. "Ozark Trail" does not identify any specific product, let alone an instant canopy product.

Further, as part of its S.P.R. 2.1.3 disclosures, Caravan was required to produce "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." Geyer Decl. at ¶ 2, Ex. A at S.P.R. 2.1.3. Caravan provided a single claim chart with the label, "Walmart, Ozark Trail cathedral style frame." Geyer Decl. at ¶¶ 3, 6, Ex. B at 2 and Ex. E at 1. No Walmart instant canopy, however, bears this name. A search of "Ozark Trail cathedral style frame" on Walmart.com yields over 1,000 product results, many of which are not instant canopies. *See* Geyer Decl. at ¶ 8, Ex. F.

On March 19, 2020, Walmart sent a letter to Caravan identifying deficiencies in its Infringement Contentions. During a later meet and confer, Walmart pointed out the deficiencies in the contentions; specifically, that they failed to identify the Accused Instrumentalities in sufficient detail and failed to provide a claim chart for each Accused Instrumentality. *Id.*, ¶ 7. However, Caravan did not indicate it would take any action in response to the concerns Walmart raised.

## III. LEGAL STANDARD

District courts are authorized to "consider and take appropriate action" to facilitate the "just, speedy, and inexpensive disposition" of all matters before them. Fed. R. Civ. P. 16; *see also* Fed. R. Civ. P. 1. Patent cases are expensive and particularly burdensome on courts. Due to the unique challenges of patent cases, Judge Guilford's Standing Patent Rules were "drafted . . . to reduce transaction costs and increase procedural predictability. A primary goal was that the rules be outcome neutral and as concise as possible." Geyer Decl. at ¶ 2, Ex. A at 1.

The Standing Patent Rules exist to provide "structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *DGS Sys. v. Checkpoint Techs., LLC*, No. C 11-03792 PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (citations omitted). S.P.R. 2.1, like the Northern District of California's Patent Local Rule (L.R.) 3-1, requires the party claiming infringement "to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-cv-02463-WHO, 2017 WL 76950, at *3 (N.D. Cal. Jan. 9, 2017). This "prevent[s] a shifting sands approach to claim construction." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (internal quotations omitted).

Federal Rule of Civil Procedure 11 establishes a minimum level of detail required for disclosures under patent local rules, including infringement contentions. *See, e.g.*, *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002). While S.P.R. 2.1 does not "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case," *Droplets, Inc. v. Amazon.com, Inc.*, No. C12-03733 HRL, 2013 WL 1563256, at *2 (N.D. Cal. Apr. 12, 2013) (citations omitted), the plaintiff must "include in its infringement contentions all facts known to it, including those discovered in the pre-filing inquiry," *Theranos, Inc. v. Fuisz Pharma LLC*, Case Nos. 11-cv-05236-YGR, 12-cv-03323-YGR, 2012 WL

6000798, at *2 (N.D. Cal. Nov. 30, 2012).

The patentee's contentions must be specific enough to provide "reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (citing *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)); *see also Mortgage Grader, Inc. v. Costco Wholesale Corp.*, No. SACV 13-00043 AG (ANx), 2014 WL 10763261 (C.D. Cal. Oct. 27, 2014) (Guilford, J.) ("[T]he Court's Standing Patent Rules require both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions." (internal quotation omitted)).

On November 20, 2019, per S.P.R. 2.1, Caravan was required to serve its Infringement Contentions. S.P.R. 2.1 requires the following disclosures:

(1) "[e]ach claim of each patent in suit that is allegedly infringed by each opposing party," Geyer Decl. at ¶ 2, Ex. A at S.P.R. 2.1.1;

(2) "[s]eparately for each asserted claim, each Accused Instrumentality. This identification shall be as specific as reasonably possible," Geyer Decl. at ¶ 2, Ex. A at S.P.R. 2.1.2; and

(3) "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality," Geyer Decl. at ¶ 2, Ex. A at S.P.R. 2.1.3.

"[T]he burden of specifically identifying all accused devices [is] on the Plaintiff." *Infineon Techs. AG v. Volterra Semiconductor Corp.*, No. C 11-6239 MMC, 2012 WL 6184394, at *3 (N.D. Cal. Dec. 11, 2012); *see also Grecia v. Apple, Inc.*, No. C-14-0775 EMC, 2014 WL 4685195, at *1 (N.D. Cal. Sept. 19, 2014) (requiring "exacting identification of the accused instrumentality"). Only narrow exceptions to these identification requirements exist "if the plaintiff does not know of the allegedly infringing product when it serves its infringement contentions and could not have discovered the product absent discovery." *Infineon Techs.*, 2012 WL

6184394, at *3.

"Judge Gilford's Standing Patent Rules are similar to the Patent Local Rules adopted by the Northern District of California and many other districts." *Mortgage Grader*, 811 F.3d at 1320. When a plaintiff fails to follow the Standing Patent Rules and virtually identical patent rules in the Northern District of California, courts will strike plaintiff's infringement contentions. *See, e.g.*, *Uniloc USA, Inc. v. Apple Inc.*, No. C-18-00360 WHA, 2018 WL 3219486, at *1 (N.D. Cal. July 2, 2018) (striking contentions for using representative claim chart and exemplar products without sufficient explanation); *Essociate, Inc. v. 4355768 Canada Inc.*, No. SACV 14-0679 JVS (DFMx), 2015 WL 12745799, at *3 (C.D. Cal. Jan. 14, 2015) (striking contentions for defining products too broadly to cover non-infringing products).

## IV. ARGUMENT

Caravan's Infringement Contentions fail to contain the specificity required by the Standing Patent Rules and should be stricken. First, Caravan failed to identify any Walmart accused product, let alone with specificity required under S.P.R. 2.1.2. Caravan failed to do so despite the fact that Walmart's website provides a detailed search feature combined with ample information about its instant canopies. Instead, Caravan used imprecise and overbroad categorical descriptions that necessarily include over 1,000 products, including hundreds of products incapable of infringing the '040 patent.

Second, Caravan failed to provide a claim chart for each accused product as required under S.P.R. 2.1.3. Instead, Caravan disclosed only a single claim chart containing unlabeled photos of an unknown instant canopy product. Caravan failed to argue that its chart of this unknown product is exemplary or representative of all the undefined Walmart accused products, and in any event, provided no support for doing so. Caravan's failure to follow and provide the specificity required under S.P.R. 2.1.2 and 2.1.3 makes it impossible for Walmart to know which products are at issue in this case. Accordingly, this Court should strike Caravan's Contentions.

WALMART'S MEMO ISO MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS - 7 -
CASE NO. 2:19-CV-06978-PSG-ADS

### A. Caravan's Infringement Contentions Fail to Comply With S.P.R. 2.1.2

Standing Patent Rule 2.1.2 requires a party asserting infringement to identify "[s]eparately for each asserted claim, each Accused Instrumentality. This identification shall be as *specific as reasonably possible*." Geyer Decl. at ¶ 2, Ex. A at S.P.R. 2.1.3 (emphasis added). The Standing Patent Rules "place the burden of specifically identifying all accused devices on the Plaintiff." *Infineon Techs.*, 2012 WL 6184394, at *3. Caravan fails to meet its burden because its Infringement Contentions do not specify any Walmart Accused Instrumentality—in other words, they do not identify an actual Walmart instant canopy. Walmart must guess as to what products are at issue in this case. The scenario Caravan has created defeats the purpose "to crystallize its theories of the case early in the litigation." *Geovector Corp.*, 2017 WL 76950, at *3.

1. **"Ozark Trail" is not a specific type of instant canopy.**

In Caravan's S.P.R. 2.1.2 disclosures, it identifies the Accused Instrumentalities only as "Ozark Trail." In Caravan's S.P.R. 2.1.3 claim chart, Caravan only identifies the product as "Walmart, Ozark Trail cathedral style frame" and "The Walmart Ozark Trail Canopy." Geyer Decl. at ¶¶ 3, 6, Ex. B at 2 and Ex. E at 1. None of these descriptions identify the accused products as "specific[ly] as reasonably possible," Geyer Decl. at ¶ 2, Ex. A. at S.P.R. 2.1.3, or provide "exacting identification" of any product. *Grecia*, 2014 WL 4685195, at *1.

As previously explained, "Ozark Trail" is a Walmart brand of outdoor equipment products encompassing hundreds of diverse products. Further, a search of "Ozark Trail cathedral style frame" on Walmart.com yields over 1,000 results, many of which are non-accused camping tents—not instant canopies. *See* Geyer Decl. at ¶ 8, Ex. F. Walmart cannot reasonably determine which Accused Instrumentalities are at issue from Caravan's overbroad and vague descriptions.

Caravan's Infringement Contentions thus necessarily cover products that it

must concede cannot infringe.[4] Its Infringement Contentions capture thousands of products, resulting in a situation similar to another case before this Court, *Essociate, Inc. v. 4355768 Canada Inc.*, No. SACV 14-0679 JVS (DFMx), 2015 WL 12745799 (C.D. Cal. Jan. 14, 2015). There, the plaintiff, Essociate, defined the accused products in its infringement contentions as "all versions of CrakMedia's affiliate-marketing service…including but not limited to CrakMedia's online CrakRevenue affiliate platform." *Id.* at *3.

The court found that Essociate "put[] the cart before the horse" and that it "cannot pin its hopes on discovery and bundle together products that admittedly have the potential to be non-infringing with the single product that Essociate allegedly 'knows' infringes." *Id.* To allow "Essociate to cast such a wide net would defeat the purpose of Patent Local Rule 3-1." *Id.* Similarly, here, Caravan's imprecise and overbroad definitions necessarily bundle non-instant canopy products (and therefore products incapable of infringing) with instant canopies.

S.P.R. 2.1.2, like Patent Local Rule 3-1, "does not tolerate broad categorical definitions…." *Infineon Techs. AG*, 2012 WL 6184394, at *3 (internal quotations omitted). Instead, the plaintiff must disclose "a full list of accused products … as part of a party's infringement contentions if they are known to the plaintiff." *Id.* (internal quotations omitted). Caravan failed to do so. Thus, like in *Essociate*, this "broad list of products as Accused Instrumentalities is insufficient" under the patent local rules and should be stricken. *Essociate*, 2015 WL 12745799, at *3.

    2. **Caravan had access to much more information than it disclosed in its contentions.**

Standing Patent Rule 2.1.2 requires that the identification of accused products "be as specific as reasonably possible." Geyer Decl. at ¶ 2, Ex. A at S.P.R. 2.1.2. Caravan's contentions do not come close to this standard.[5] Caravan therefore failed

---

[4] Walmart, of course, disputes the notion that any of its products infringe the '040 patent's claims.

[5] Its complaint, for example, identifies several specific allegedly infringing products

to comply with the Standing Patent Rules.

This case involves easily obtainable consumer products—instant canopy tents—that Caravan could have purchased or researched with ease on Walmart's website (or that website through the Wayback machine, should Caravan require evidence of what Walmart sold in the past to comply with its Federal Rule of Civil Procedure 11 obligations and the infringement contention requirements for a now-expired patent). Further, Walmart's website provides a detailed search feature combined with ample information about its instant canopies, including: (a) name; (b) Walmart product number; and (c) a user manual containing manufacturer part numbers, among other identifying characteristics. *See supra*, n. 1. The Standing Patent Rules required Caravan to identify the accused products with specificity, and Caravan could have used any of these identifying elements. Instead, despite their ready availability, Caravan used none of them.

This case does not fall within any exception to the rule. *See Infineon Techs. AG*, 2012 WL 6184394, at *3 (discussing narrow exceptions to the requirement to specifically identify accused products "if the plaintiff does not know of the allegedly infringing product when it serves its infringement contentions and could not have discovered the product absent discovery"). As discussed, Caravan could have known of the allegedly infringing products by researching Walmart's website or the Wayback machine. Further, should Caravan claim that there are products that it "could not have discovered . . . absent discovery," Caravan "must articulate how the

---

by name. ECF No. 1, ¶ 10. Inexplicably, Caravan does not mention these specific products in its Infringement Contentions, despite the clear language of S.P.R. 2.1.3. Thus, Caravan failed to "include in its infringement contentions all facts known to it, including those discovered in its Fed. R. Civ. P. 11 pre-filing investigation" because it failed to list the specific Walmart products identified in the Complaint (ECF No. 1. at ¶ 10) or as clarified in Walmart's Answer (ECF No. 10 at ¶ 10). *See Droplets*, 2013 WL 1563256, at *1. Thus, Caravan's Infringement Contentions fail to disclose the Accused Instrumentalities "as specific[ally] as reasonably possible," Geyer Decl. at ¶ 2, Ex. A at S.P.R. 2.1.3, and as required under Federal Rule of Civil Procedure 11. *See, e.g., Droplets*, 2013 WL 1563256, at *1.

unknown accused products share the same, or substantially the same, infringing structure with a named product." *Id.* (internal quotations omitted). Yet Caravan never claimed any unknown accused products exist nor that they share substantially the same infringing structure with any named product. Indeed, as discussed, Caravan failed to name any product.

To avoid any doubt, Walmart's arguments in this motion are based only on publicly available information, and specifically Walmart's website, not any proprietary information that Caravan lacked access to when preparing its Infringement Contentions. Indeed, Caravan accessed Walmart's website in the past, relying on a printout for the Ozark Trail 10' x 10' Straight Leg Instant Tailgate Canopy in its complaint. *See* ECF No. 1 at ¶ 11; ECF No. 1-2.

The Standing Patent Rules are bright line rules, not mere guidelines that a plaintiff can avoid in an attempt to keep its case as broad as possible. Caravan's overzealous attempt to capture as many infringing products violated the rules, and for that reason, its contentions should be stricken.

### B. Caravan's Claim Chart Is Inadequate Under S.P.R. 2.1.3

Patentees must provide a "chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." Geyer Decl. at ¶ 2, Ex. A at S.P.R. 2.1.3. As noted above, Caravan did not identify any actual accused instrumentality. And in its single claim chart, Caravan identified what it called the "Walmart, Ozark Trail cathedral style frame," which is not a specific Walmart product or even a set of products. Its chart, like the rest of its contentions, fails to contain the specificity required by the Standing Patent Rules.

Caravan's claim chart contains photos of what is, presumably, an instant canopy that Caravan or its counsel bought and deconstructed:

| CLAIM TERM: | DESCRIPTION: |
|---|---|
| 1. A collapsible tent frame, comprising: | The preamble of a collapsible tent frame is presumably not limiting. Below is an image for convenient comparison showing the collapsible tent frame.  |

Geyer Decl. at ¶ 6, Ex. E at 2. Walmart, however, cannot tell from these unlabeled images whether the photos depict any Walmart product. Neither the chart nor the photos contain any identifying name, size, product number, shipping information such as an invoice number, product packaging, or any other identifier. Once more, Caravan's decision to skirt the Standing Patent Rules leaves Walmart guessing as to which of its products are at issue in this case.

Caravan's contentions do not argue that its chart of an unknown product is exemplary or representative of a broader set of Walmart instant canopies. Regardless, however, Caravan failed to provide any justification for using representative or exemplary claim charts. *See O.S. Security LLC v. Sargent Mfg. Co.*, No. SACV 14-0318 AG (DFMx), 2014 WL 12601564, at *2 (C.D. Cal. July 10, 2014) (Guilford, J.) ("[C]laim charts can, in appropriate cases and *given appropriate support*, place accused products into representative categories…" (emphasis added)). To rely on representative products in its S.P.R. 2.1.3 claim charts, Caravan must put forth sufficient rationale that "it would be impossible or

unduly burdensome to provide infringement contentions" and that the accused products are "clearly representative of each other." *Id.* Caravan failed to do so.

Therefore, Caravan's Infringement Contentions—including its single chart—are inadequate under S.P.R. 2.1.3 and should be stricken.

## V. CONCLUSION

For the foregoing reasons, Walmart respectfully requests that the Court grant this Motion to Strike Plaintiff's Infringement Contentions.

DATED: April 1, 2020

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By:  */s/ Dario A. Machleidt*
　　　DARIO A. MACHLEIDT

Dario A. Machleidt (*admitted pro hac vice*)
dmachleidt@kilpatricktownsend.com
Kathleen R. Geyer (*admitted pro hac vice*)
kgeyer@kilpatricktownsend.com
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101

Steven D. Moore (Bar No. 290875)
smoore@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone:  (415) 576-0200
Facsimile:   (415) 576-0300

Megan M. Chung (Bar No. 232044)
mchung@kilpatricktownsend.com
9720 Wilshire Blvd. PH
Beverly Hills, CA  90212-2018
Telephone:  (310) 248-3830
Facsimile:   (310) 860-0363

Attorneys for Defendant WALMART INC.